1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

　　　　　　Petitioner,

　　　v.

MOISES BECERRA, et al.,

　　　　　　Respondents.

Case No.  23-cv-04767-PCP

**ORDER ON HABEAS PETITION**

　　　For more than two years, U.S. Immigration and Customs Enforcement (ICE) has detained John Doe (proceeding under a pseudonym) without ever conducting an individualized bond hearing to consider whether his detention is necessary to protect the public's safety or ensure his availability for deportation at the end of his removal proceedings, which are ongoing. ICE detains Mr. Doe pursuant to 8 U.S.C. § 1226(c), which mandates the detention pending removal of people like Mr. Doe who have been convicted of certain crimes. ICE is holding Mr. Doe at a private detention center that is operated for profit by The GEO Group, Inc. and located outside of the Northern District but overseen by ICE officials based in San Francisco.

　　　For the reasons set out below, the Court concludes that it has jurisdiction over Mr. Doe's petition and that Mr. Doe's prolonged detention without a bond hearing violates his procedural due process rights. The government is therefore ordered, by December 15, 2023, to provide Mr. Doe with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Mr. Doe's continued detention is justified by the need to prevent Mr. Doe's flight or protect the public.

I.      **Background**

Except as indicated, the following facts are not disputed:

Mr. Doe was born in Mexico and brought to the United States by his mother as an infant. He is not a U.S. citizen, but his daughter, partner, brother, sister, mother, and stepfather are all U.S. citizens who reside in the United States.

Mr. Doe joined a gang when he was 12 or 13 years old. In 1997, he was convicted of assault and sentenced to five years of probation with a four-year suspended prison sentence. In 2001, he was convicted of robbery and attempted robbery (he was acquitted of a third charge for carjacking). Mr. Doe pleaded not guilty and maintains his innocence. He recently filed a habeas petition under the California Racial Justice Act for which the state court appointed an attorney and held a hearing last month. Mr. Doe was ultimately sentenced to twenty-six years and four months in prison, with enhancements based on his previous conviction and gang involvement.

While in state custody, Mr. Doe joined the California Department of Corrections and Rehabilitation Fire Camp program and spent the last three years of his incarceration working as a firefighter. He completed his sentence in September 2021 and is on state parole until September 2024. If he is able to remain in the United States, Mr. Doe hopes to take advantage of a new law that enables Fire Camp participants like him to become professional firefighters upon release.

On September 30, 2021, following his release from state detention, ICE took Mr. Doe into custody and detained him at the Golden State Annex (GSA) in McFarland, California. GSA is a private immigration detention facility operated for profit by GEO under contract with ICE. It is located outside the Northern District. The GSA warden (who is not a federal official) is employed by GEO and based in McFarland. GSA falls within the area of responsibility of the San Francisco Field Office for ICE Enforcement and Removal Operations. Respondent Moises Becerra is the director of that office and performs his official duties in this district. Mr. Doe claims "Becerra is the federal official most directly responsible for overseeing Golden State Annex." Dkt. No. 1, at 9. According to the government, GSA is overseen "through various inspection processes by ICE and other entities." One of these processes is that, according to the government, ICE Acting Assistant Field Office Director Nancy Gonzalez and other ICE staff "directly liaise with the warden and

other GEO employees at GSA." Dkt. No. 18, at 8–9. Ms. Gonzalez and her direct supervisor, Deputy Field Office Director Orestes Cruz, are based in Bakersfield, California, which is not in the Northern District. Mr. Cruz's direct supervisor is Mr. Becerra, based in San Francisco.

Upon taking Mr. Doe into custody, ICE initiated removal proceedings. ICE charged Mr. Doe with being removable under 8 U.S.C. § 1182(a)(6)(A)(i), which specifies that any "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." Mr. Doe is detained pending removal pursuant to 8 U.S.C. § 1226(c), which directs that the "Attorney General shall take into custody any alien who … is deportable by reason of having committed [certain crimes listed in other sections] … when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Mr. Doe does not contest that his prior convictions are covered under Section 1226(c).

According to the government, the Department of Homeland Security (DHS) conducted a "custody redetermination" in September and early October 2021 and concluded that Mr. Doe should be detained notwithstanding the conditions at immigration facilities during the Covid-19 pandemic because he would be a threat to public safety if released.

Mr. Doe's first removal hearing was held on October 26, 2021, according to the government, and he asked for a continuance so he could consult an attorney. According to Mr. Doe, his partner then retained an attorney to represent him. The attorney obtained several continuances in order to allow time to address the removability charges and then prepare an application for deferral of removal under the Convention Against Torture. Even with the additional time, Mr. Doe asserts that his attorney submitted only "scant evidence" in support of his deferral claim. He contends that his attorney "rarely communicated" with him throughout the process and did not seek his consent in obtaining continuances. Dkt. No. 1, at 15–17.

The hearings on Mr. Doe's removal and application for deferral concluded on August 11, 2022. The immigration judge issued a decision on November 22, 2022 denying Mr. Doe's deferral application and ordering him removed to Mexico. Mr. Doe appealed to the Board of Immigration

United States District Court
Northern District of California

1   Appeals, which dismissed his appeal on May 4, 2023. Mr. Doe has asked the Ninth Circuit to

2   review the removal decision and accompanying dismissal of his Convention Against Torture

3   claim, and that appeal remains pending. The Ninth Circuit has stayed Mr. Doe's removal pending

4   further order of that court.

5       Separately from that appeal, and with new counsel, Mr. Doe moved to reopen his original

6   removal proceedings based on ineffective assistance of counsel. According to Mr. Doe, while the

7   original proceedings were occurring the State Bar of California placed Mr. Doe's original attorney

8   on probation and the Board of Immigration Appeals suspended the attorney from practicing before

9   the Executive Office for Immigration Review. The original attorney, however, did not notify Mr.

10  Doe of these actions. In addition, Mr. Doe contends that he was eligible to apply for a waiver that

11  would permit him to pursue lawful permanent resident status but his original attorney failed to

12  investigate that possibility or explain it to him before the initial proceedings. Mr. Doe's motion to

13  reopen his removal proceedings was denied on September 5, 2023. Mr. Doe appealed that decision

14  to the Ninth Circuit, which subsequently granted the government's motion to remand the matter to

15  the BIA for clarification regarding the legal standard it had applied in denying Mr. Doe's request.

16      On August 10, 2023, Mr. Doe submitted to ICE a request for release from custody under

17  an order of supervision. Mr. Doe argued that his release was warranted under federal regulations

18  because he was unlikely to be removed in the foreseeable future and was not a flight risk or danger

19  to the community, and because his detention was not a DHS enforcement priority. According to

20  Mr. Doe, ICE denied that request one day later in a three-sentence email. The government says it

21  "reviewed the request and concluded that detention was warranted due to the petitioner's criminal

22  history and continued determination that he posed a threat to public safety." Dkt. No. 19, at 5. ICE

23  did not provide Mr. Doe with any means to appeal that decision.

24      Mr. Doe has now been detained at ICE's private detention facility for more than two years.

25  To date, he has not received a bond hearing before an immigration judge to determine whether he

26  could be released from custody upon payment of a bond. At such hearings, an immigration judge

27  "considers whether respondent's release would pose a danger to property or persons, whether the

28  respondent is likely to appear for further immigration proceedings, and whether the respondent is a

4

1   threat to national security," and may set the amount of bond if release is determined to be

2   appropriate. *See* Dep't of Justice, *Immigration Court Practice Manual*, ch. 9.3, at 124–26 (2023).

3   By regulation, immigration judges do not conduct bond hearings for noncitizens who are subject

4   to mandatory detention under Section 1226(c). *See id.*; 8 C.F.R. § 1003.19(h)(2)(i).

5          According to Mr. Doe, the conditions at GSA are "unlivable and unsanitary" and he has

6   developed medical and mental health issues while in ICE custody, including high blood pressure,

7   high cholesterol, diabetes, depression, insomnia, and fatigue. Dkt. No. 1, at 15, 21.

8          Mr. Doe petitioned this Court for a writ of habeas corpus on September 15, 2023, arguing

9   that his continued detention violates both his substantive and procedural due process rights. Mr.

10   Doe requests three alternative forms of relief: (1) an order that he immediately be released from

11   custody and placed on supervised release; (2) a bond hearing before this Court; or (3) a bond

12   hearing before an immigration judge. The parties stipulated to a briefing schedule, and the Court

13   held a hearing on Mr. Doe's petition on November 15, 2023.

## II.   Legal Standards

15          The Court can grant a writ of habeas corpus to detainees in custody "under … the authority

16   of the United States" or "in violation of the Constitution or laws or treaties of the United States."

17   28 U.S.C. § 2241(c)(1), (c)(3). Although Congress has barred courts from reviewing certain

18   discretionary decisions regarding the detention or release of noncitizens subject to removal

19   proceedings, *see* 8 U.S.C. §§ 1226(e), 1252(a), federal courts retain jurisdiction to "review related

20   'constitutional claims or questions of law,'" including via habeas petitions. *Martinez v. Clark*, 36

21   F.4th 1219, 1224 (9th Cir. 2022) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)).

22          An application for a writ of habeas corpus "shall allege the facts concerning the applicant's

23   … detention." 28 U.S.C. § 2242. In turn, the allegations made in an answer to a habeas petition,

24   "if not traversed, shall be excepted as true." *Id.* § 2248. Oral testimony, depositions, affidavits, and

25   documentary evidence are permissible. *See id.* §§ 2246, 2247. Following receipt of a habeas

26   petition, the Court "shall summarily hear and determine the facts, and dispose of the matter as law

27   and justice require." *Id.* § 2243.

28

United States District Court
Northern District of California

5

1    **III.    This Court Has Jurisdiction To Consider Mr. Doe's Petition.**

2           Mr. Doe is detained at a private contract facility located outside the Northern District. The

3    government argues that this fact deprives this Court of jurisdiction over his application. But courts

4    in this district have repeatedly rejected this argument and exercised jurisdiction over petitions like

5    this one where federal officials within the Northern District oversee detention that has been

6    outsourced to contract facilities outside the district.[1] For the reasons that follow, the Court concurs

7    and concludes that it has jurisdiction over Mr. Doe's petition.

8           The government's jurisdictional challenge involves two intertwined arguments. First, the

9    government argues that Mr. Becerra, ICE's San Francisco Field Office Director, is not the proper

10   respondent because he is not Mr. Doe's immediate custodian. Second, the government argues that

11   only the federal court of the district of confinement—in this case, the Eastern District—has

12   jurisdiction over habeas petitions challenging present physical confinement. As the parties

13   recognized during oral argument, however, the first question is dispositive. Under 28 U.S.C.

14   _____

15   [1] *See, e.g.*, *Martinez Leiva v. Becerra*, No. 23-cv-02027-CRB, 2023 WL 3688097 (N.D. Cal. May

16   26, 2023) (Breyer, J.) (exercising jurisdiction over habeas petitioner detained at GSA); *Hernandez Gomez v. Becerra*, 23-cv-01330-WHO, 2023 WL 2802230 (N.D. Cal. Apr. 4, 2023) (Orrick, J.)

17   (GEO-operated Mesa Verde ICE Processing Center, Bakersfield, California); *Salesh P. v. Kaiser*, No. 22-cv-03018-DMR, 2022 WL 17082375 (N.D. Cal. Nov. 18, 2022) (Ryu, Mag. J.) (GSA);

18   *Henriquez v. Garland*, No. 5:22-cv-00869-EJD, 2022 WL 2132919 (N.D. Cal. June 14, 2022) (Davila, J.) (Mesa Verde); *Z.R. v. Kaiser*, No. 22-cv-01712-YGR (N.D. Cal. May 27, 2022)

19   (Gonzalez Rogers, J.) (Mesa Verde); *Ameen v. Jennings*, No. 22-cv-00140-WHO, 2022 WL 1157900 (N.D. Cal. Apr. 19, 2022) (Orrick, J.) (GSA); *Meneses v. Jennings*, No. 21-cv-07193-JD,

20   2021 WL 4804293 (N.D. Cal. Oct. 14, 2021) (Donato, J.) (GSA); *Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (Freeman, J.) (GSA); *Domingo v. Barr*,

21   No. 20-cv-06089-YGR, 2020 WL 5798238 (N.D. Cal. Sept. 29, 2020) (Gonzalez Rogers, J.)

22   (Yuba County Jail, Marysville, California); *Montoya Echeverria v. Barr*, No. 20-cv-02917-JSC, 2020 WL 2759731 (N.D. Cal. May 27, 2020) (Corley, Mag. J.) (Yuba County Jail); *Hilario*

23   *Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022 (N.D. Cal. May 19, 2020) (Corley, Mag. J.) (Yuba County Jail); *Ortuño v. Jennings*, No. 20-cv-02064-MMC, 2020 WL 2218965

24   (N.D. Cal. May 7, 2020) (Chesney, J.) (Mesa Verde and Yuba County Jail); *Singh v. Barr*, No. 20-cv-02346-VKD, 2020 WL 2512410 (N.D. Cal. May 15, 2020) (DeMarchi, Mag. J.) (Federal

25   Detention Center, Honolulu, Hawaiʻi); *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal.

26   2020) (Chhabria, J.) (Mesa Verde and Yuba County jail); *Doe v. Barr*, No. 20-cv-02263-RMI, 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020) (Illman, Mag. J.) (Yuba County Jail); *Masood v.*

27   *Barr*, 19-CV-07623-JD, 2020 WL 95633 (N.D. Cal. Jan. 8, 2020) (Donato, J.) (Yuba County Jail); *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) (Chhabria, J.) (Juvenile Detention

28   Facility, Yolo County), *aff'd*, 905 F.3d 1137 (9th Cir. 2018).

United States District Court
Northern District of California

§ 2241(a), "[w]rits of habeas corpus may be granted by … the district courts …within their respective jurisdictions." If Mr. Becerra, based in San Francisco, is properly named as a habeas respondent, he is clearly within this Court's jurisdiction and a writ may properly be directed at him. By contrast, if the petition must name the unidentified GEO employee who administers GSA and is located outside the Northern District, then this Court may not issue a writ to that employee.

The federal habeas statute specifies that an application for a writ of habeas corpus "shall allege … the name of the person who has custody over" the applicant. 28 U.S.C. § 2242. Similarly, if a court issues a writ, it must "be directed to the person having custody of the person detained." *Id.* § 2243. Interpreting a predecessor of this statute more than a century ago, the Supreme Court explained that "these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Wales v. Whitney*, 114 U.S. 564, 574 (1885). More recently, in *Rumsfeld v. Padilla*, the Supreme Court reasoned: "In accord with the statutory language and *Wales*' immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement— 'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. 426, 435 (2004). "The plain language of the habeas statute," the Court continued, "thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443. "This is because … the immediate custodian rule applies to core habeas challenges to present physical custody," and "[b]y definition, the immediate custodian and the prisoner reside in the same district." *Id.* at 444.[2]

The question in this case is whether and how these "default" and "general" rules apply when a federal detainee is held in a non-federal facility operated under contract with the federal government. Or, put otherwise, who qualifies as the "immediate custodian" that Mr. Doe must

---

[2] The Supreme Court in *Padilla* expressly declined to resolve the open question "whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation." 542 U.S. at 435 n.8. *Padilla* thus did not decide the issue presented here.

name? The government argues that the only proper respondent in this case is the Facility

Administrator—an unidentified GEO employee who is not a federal official. According to ICE

Acting Assistant Field Office Director Gonzalez, this "Facility Administrator (i.e., warden) and

her staff exercise day-to-day control over the non-citizens housed at GSA, have the majority of

daily contact with the non-citizens housed there, and administer the day-to-day facility operations

at GSA." Dkt. No. 20, at 2–3.

There are several problems with the government's position. First, *Wales* defined an

immediate custodian for habeas purposes as "some person … with the power to produce the body

of such party before the court or judge, that he may be liberated if no sufficient reason is shown to

the contrary." 114 U.S. at 574. Even if the GSA Facility Administrator exercises "day-to-day

control" over Mr. Doe, as the government contends, it is doubtful that this private citizen would

have either the legal authority or practical ability to "produce the body" of Mr. Doe "before the

court." *See id.* After all, the Facility Administrator "has custody of an immigration detainee …

only to the extent provided by the facility's contract with the federal government." *See Saravia v.

Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017). She may be the day-to-day "custodian" in a

colloquial sense, but she "lacks any *actual* authority over the immigrant detainee." *See Domingo v.

Barr*, No. 20-cv-06089-YGR, 2020 WL 5798238, at *2 (N.D. Cal. Sept. 29, 2020) (emphasis

added). Even if a court so ordered, it is questionable whether this GEO employee would actually

have the power to remove Mr. Doe from GSA and retain custody while transporting him to a

court; at the very least, doing so would require permission and cooperation from ICE. Without

such permission, it is not clear why she would have any independent basis to maintain Mr. Doe's

custody beyond the confines of GSA.

Second, even if the Facility Administrator could "produce" Mr. Doe to the Court, she

would be poorly positioned to defend his detention. Presumably she lacks much of the information

needed to justify Mr. Doe's detention, and she and her employer, a private for-profit corporation,

certainly lack the federal government's incentive to do so. *See also Doe v. Barr*, No. 20-CV-

02263-RMI, 2020 WL 1984266, at *5 (N.D. Cal. Apr. 27, 2020) ("[I]t goes without saying that the

Sheriff of Yuba County is ill-placed to respond to the merits of the claims underlying the habeas

United States District Court
Northern District of California

petition at bar because the Sheriff would not be in possession of the information necessary to answer on behalf of federal immigration authorities, nor does the Sheriff have any legitimate interest in litigating these claims."). Notably, the federal habeas statute requires a court, on application, to a direct a writ or order "to the person having custody of the person detained." 28 U.S.C. § 2243. The court must issue such a writ or order "forthwith," and the named person must then respond "within three days" (or up to twenty "for good cause"), "certifying the true cause of the detention." *Id.* But in cases like this one, the Facility Administrator is a "mere functionary, no different than an individual jailor posted outside Petitioner's cell block." *Doe*, 2020 WL 1984266, at \*5. There are no allegations that the Facility Administrator or any other GEO employee played any role in the decisions or proceedings that led to Mr. Doe's detention, let alone that she would be in a position to swiftly "certify" the causes thereof as required by statute, even with secondhand information. Indeed, it is telling that the declarations submitted in support of the government's return to this petition are exclusively from federal officials: ICE Acting Assistant Field Office Director Gonzalez, Dkt. No. 20, and ICE Deportation Officer Paul Villagran, Dkt. No. 19.

Third, even assuming the GSA Facility Administrator could produce Mr. Doe and defend his detention, she is not in a position to provide the kind of relief a court might order in response. An order of release would confront her with conflicting commands from coequal branches of government: The contract with ICE compels her to keep Mr. Doe in custody, while the order from this Court would demand his release. An order to hold a bond hearing before an immigration judge—which is a form of relief repeatedly provided by other courts in this district in cases similar to Mr. Doe's—would present even more difficulties. It would be impossible for the GSA Facility Administrator to comply with such an order on her own since GEO does not employ immigration judges, and in any event the government presumably does not wish for GEO to assume the responsibility for determining whether to continue Mr. Doe's detention.

Finally, the habeas statute is imbued with urgency based on the recognition that any form of unlawful detention is a serious deprivation that a court must seek to expeditiously resolve. *See* 28 U.S.C. § 2243. The statute envisions the entire habeas process—from application to return to

9

United States District Court
Northern District of California

hearing to decision—being resolved within a matter of *days*.[3] *Id.* A pedantic application of the "default" immediate custodian rule that ignores the practical realities of private detention risks frustrating detainees' timely access to the habeas corpus relief guaranteed by statute and the Constitution. Whether this is the government's goal or merely a byproduct of its decision to outsource detention to remote facilities operated by private contractors, "it cannot be argued with any seriousness that when the warden of a detention facility has no literal power to produce the petitioner, and cannot provide any meaningful answers to important factual and legal questions, that nevertheless courts should apply the immediate custodian rule and drive the litigation into a dead-end for no legitimate reason and to the benefit of no party." *Doe*, 2020 WL 1984266, at *5.

The government also contends in a footnote that even if a federal official is the appropriate respondent for this petition, Mr. Doe should have named Acting Assistant Field Office Director Gonzalez rather than Mr. Becerra because she is the "*most* immediate" federal official. Dkt. No. 18, at 11–12 n.2 (emphasis added). But the government points to no binding authority for this argument, and the case from this district that it cites does not support its conclusion. In *Saravia v. Sessions*, the Court concluded that a habeas petitioner detained under contract had "properly sued … the federal official tasked with enforcing the contract." 280 F. Supp. 3d at 1186. The Court noted that "[w]hat makes" that official "the proper respondent … is not any power to make binding decisions about … custody" (an argument that could logically be extended as far up the chain of command as the Attorney General), but rather that the official was "readily identifiable" and "exercises more immediate control over a contract facility than the Attorney General or another department head." *Id.* at 1187. The qualification that the respondent be "readily identifiable" is crucial and was part of the Court's recognition that the "application of the immediate custodian rule must take account" of the practical realities of private detention. *Id.* at 1185.

---

[3] This District's Habeas Local Rules, which set a more protracted briefing schedule for challenges to custody pursuant to a state court judgment, do not apply to habeas challenges to immigration detention.

United States District Court
Northern District of California

1   The government's argument ignores these practical realities. The government would have

2   Mr. Doe blindly guess as to the structure and division of responsibilities of a federal bureaucracy

3   with which he presumably has minimal day-to-day contact during his detention by a private

4   corporation. The government states that Acting Assistant Field Office Director Gonzalez "liase[s]"

5   with GEO employees at GSA (although she is based in a different city). Dkt. No. 18, at 9. But so

6   do her unidentified "staff." The government also states that both Deputy Field Office Director

7   Orestes and Field Office Director Becerra also provide "oversight." *Id.* So how should Mr. Doe

8   know whom to name? If he researched habeas petitions by other noncitizens detained at GSA and

9   other contract facilities, he would see that courts in this district have repeatedly held that ICE's

10  San Francisco Field Office Director is a proper respondent. If he visited ICE's own webpage for

11  the Golden State Annex facility (a government publication of which the Court may take judicial

12  notice), he would see it is prominently listed as being affiliated with the "San Francisco Field

13  Office" and that it directs all feedback, comments, and complaints to the "Field Office Director,

14  Enforcement and Removal Operations" located in San Francisco. *See* ICE, *Golden State Annex*,

15  perma.cc/5U6Q-7HZA. The government points out that Mr. Doe could name a respondent by title

16  or function, but nothing in the government's briefing suggests how Mr. Doe could have learned of

17  even the existence of Ms. Gonzalez's position of Acting Assistant Field Office Director, let alone

18  divined that she, rather than the Field Office Director listed on ICE's GSA webpage, is the one

19  actually exercising most immediate control over his detention.

20  The immediate custodian rule's purpose is not to create pointless hoops for habeas

21  petitioners to jump through before they can challenge their confinement, but to prevent the kind of

22  "rampant forum shopping" that might happen if prisoners throughout the country could name a

23  "high-level supervisory official" like the President or the Secretary of Defense (who were both

24  named in *Padilla*) and then sue them anywhere they are "amenable to long-arm jurisdiction." *See*

25  *Padilla*, 542 U.S. at 447. Here, Mr. Doe has named a *local* official who is both "readily

26  identifiable" and exercises "immediate control" over his detention. *See Saravia*, 280 F. Supp. at

27  1187. That suffices.

28

11

Mr. Becerra is properly named as the respondent to this petition. Because Mr. Becerra is located within the Northern District of California, this Court has jurisdiction to enter an order requiring Mr. Becerra to act. *See* 28 U.S.C. § 2241(a). The other respondents—Homeland Security Secretary Alejandro Mayorkas, Deputy Director for ICE Patrick Lechleitner, and Attorney General Merrick Garland—are dismissed. *See Padilla*, 542 U.S. at 434–35.

**IV.    Mr. Doe's Continued Detention Without a Bond Hearing Violates Due Process.**

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Still, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Mr. Doe is detained pursuant to 8 U.S.C. § 1226(c), which directs that the "Attorney General shall take into custody" noncitizens who are inadmissible or deportable because they have been found guilty of certain covered criminal offenses. Noncitizens whom ICE has determined to be covered by Section 1226(c)'s mandatory detention provisions may challenge that determination administratively. *See* 8 C.F.R. § 1003.19(h)(2)(ii). But for noncitizens who are properly covered by Section 1226(c), detention is mandatory except under certain narrow circumstances not applicable here. The statute does not require any additional procedure, either before the government detains those covered by its terms or after detention has become significantly prolonged, to determine whether any individual noncitizen's detention is necessary to protect the public or ensure attendance at future removal proceedings.[4]

---

[4] The Ninth Circuit previously interpreted Section 1226(c) to require the government to provide a bond hearing after six months, based on its belief that a contrary interpretation of the statute "would be constitutionally doubtful." *Rodriguez v. Robbins*, 804 F.3d 1060, 1079 (9th Cir. 2015); *see also Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008). But the Supreme Court subsequently rejected this interpretation of Section 1226(c) while declining to decide whether noncitizens have a constitutional (rather than statutory) right to such a hearing. *Jennings v. Rodriguez* 583 U.S. 281,

United States District Court
Northern District of California

The Supreme Court has held that detention under Section 1226(c) "for the brief period necessary for … removal proceedings" is facially constitutional and does not violate due process requirements. *Demore*, 538 U.S. at 513. Mr. Doe argues, however, that his detention under Section 1226(c) has gone sufficiently far beyond the "brief period" blessed in *Demore* that his continued detention without a bond hearing violates due process. He presents two alternative claims. First, he argues that the duration and conditions of his detention have rendered it unduly punitive and thus a substantive violation of due process requiring his immediate release. Second, he contends that his detention since September 2021 without any individualized review is unjustified. For the reasons explained below, the Court concludes that procedural due process entitles Mr. Doe to a bond hearing after two years of detention. Because the outcome of such a hearing might moot his substantive due process challenge, the Court reserves judgment as to whether Mr. Doe's civil immigration detention for more than two years violates substantive due process.

### A.   Mr. Doe Has a Procedural Due Process Right to a Bond Hearing.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' … interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Although "the nature of … protection may vary depending upon status and circumstance," the Supreme Court has squarely held that "the Due Process Clause protects an alien subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. And "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. There can thus be no dispute that the government has deprived Mr. Doe of his liberty; the only question is whether he has been provided with the "process" constitutionally required to justify that deprivation.

The first issue presented by Mr. Doe's claim is how the Court should determine what procedural safeguards the Constitution requires in his case. The parties do not agree what test

---

286 (2018). While "an alien detained under § 1226(c) [is] subject to that detention authority throughout the administrative and judicial phases of her removal proceedings" and is "not entitled to a bond hearing under § 1226(c) as a *statutory* matter," *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022), *reh'g and reh'g en banc denied*, 83 F.4th 1177 (9th Cir. 2023) (emphasis added), the point (if any) at which prolonged detention under Section 1226(c) without an individualized hearing becomes *unconstitutional* remains an open question.

should apply. Mr. Doe suggests that due process entitles him to a bond hearing under any of three alternatives: a bright-line rule used by one Northern District court holding that a bond hearing is required after six months of detention; a multi-factor reasonableness test that the Third Circuit and some courts in this district have applied to evaluate Section 1226(c) detention; and the canonical procedural due process test set forth in *Mathews v. Eldridge*, 424 U.S. at 335. The government argues that none of these apply.

Neither the Supreme Court nor the Ninth Circuit have conclusively decided that *Mathews* governs challenges to detention under Section 1226(c), as the government correctly points out. But part of the reason may be that until very recently, the Ninth Circuit read Section 1226(c) as requiring bond hearings as a matter of *statute* rather than constitutional due process, obviating any need to decide this question. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022). In *Rodriguez Diaz*, which the government cites as declining to decide wither *Mathews* applies to procedural due process challenges to mandatory detention under Section 1226(c), the Ninth Circuit nevertheless *did* apply *Mathews* (it "assume[d] without deciding that *Mathews* applie[d]"). Just as in *Rodriguez Diaz*, "the government [here] is not specific about the test [the Court] should apply instead." *Id.* at 1206.

The government asserts that because Mr. Doe is indisputably subject to Section 1226(c) and remains in detention only "due to his petition to the Ninth Circuit," "no further process is constitutionally required." Dkt. No. 18, at 24. But that logic has no limiting principle. Neither party disputes that Mr. Doe is required by statute to be detained. But the government clearly cannot detain Mr. Doe forever—without any individualized consideration of whether that detention is necessary to protect the public or ensure that Mr. Doe appears at his removal proceedings—simply because Section 1226(c) says so. Even if detention under Section 1226(c) may be facially constitutional for a brief initial period, *see Demore*, 538 U.S. at 513, at some point mandatory detention without individualized consideration of whether the interests invoked as generally warranting that detention in fact require it in a specific case becomes "[p]rocedure by presumption" that "cannot stand" under the Due Process Clause. *See Stanley v. Illinois*, 405 U.S. 645, 656–57 (1972).

United States District Court
Northern District of California

1

Whether that line has been crossed in Mr. Doe's case is the question now before the Court,

2

and *Mathews* provides an appropriate framework for answering it. Indeed, as the Ninth Circuit

3

recognized in *Rodriguez Diaz* (when it applied *Mathews*), *Mathews* has been widely and regularly

4

applied in the context of other immigration provisions, and "remains a flexible test that can and

5

must account for the heightened government interest in the immigration detention context." 53

6

F.4th at 1206.

7

The Court will therefore apply *Mathews* to determine whether Mr. Doe is entitled to a

8

bond hearing. That test includes three factors: "First, the private interest that will be affected by

9

the official action; second, the risk of an erroneous deprivation of such interest through the

10

procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

11

and finally, the Government's interest, including the function involved and the fiscal and

12

administrative burdens that the additional or substitute procedural requirement would entail." 424

13

U.S. at 335.

14

Mr. Doe unquestionably has a strong interest in being free from prolonged detention, and

15

the government's imposition on this interest grows with each passing day of detention. "Liberty is

16

the norm; every moment of [detention] should be justified." *United States v. Faison*, No. 19-27,

17

2020 WL 815699, at *1 (D. Md. Feb. 18, 2020). As one district court explained in the sentencing

18

context, "[t]he difference between ten and fifteen years may determine whether a parent sees his

19

young child graduate from high school; the difference between ten and fifteen months may

20

determine whether a son sees his sick parent before that parent passes away; the difference

21

between probation and fifteen days may determine whether the defendant is able to maintain his

22

employment and support his family." *Id.* Mr. Doe's interest may be stronger still because of his

23

harsh conditions of confinement and their worsening impact on his health over time.[5]

24

The government suggests that Mr. Doe's liberty interests are diminished because he is a

25

"criminal noncitizen[]" whose "removal status … is undisputed." Dkt. No. 18, at 25. But the fact

26

that he is not a citizen and has been convicted of crimes that subject him to Section 1226(c) does

27

28

[5] This is true even if, as the government urges, the remedy for such conditions would be damages or an injunction rather than a habeas petition.

15

1    not somehow reduce Mr. Doe's own personal interest in not being detained by the government for

2    multiple years in the possible absence of any need for that detention. Those factors are instead

3    better considered in evaluating the government's interests.

4        The government also argues that Mr. Doe's prolonged detention is due at least in part to

5    his own litigation choices. But there is no indication that Mr. Doe acted in bad faith or

6    purposefully sought to delay his proceedings. His interests in his physical freedom are not

7    diminished because he chose to pursue entirely legitimate proceedings to which he is legally

8    entitled. Moreover, Mr. Doe alleges that at least some of the continuances in his case were

9    obtained by his attorney (who had allegedly concealed her suspension by the California Bar and

10   the Bureau of Immigration Appeals) without his consent.

11       Conversely, the government undoubtedly has significant interests at stake. It relies upon

12   two in particular: ensuring Mr. Doe's appearance at removal proceedings and preventing him from

13   committing further crimes.[6] These are precisely the interests the Supreme Court looked to in

14   *Demore* to determine that Section 1226(c) mandatory detention is facially constitutional, at least

15   initially. *See* 538 U.S. at 515, 518. The government also points to the "time and resources" it has

16   expended in pursuing Mr. Doe's removal. Dkt. No. 18, at 28. Although these past costs are sunk

17   no matter the outcome of Mr. Doe's case, the government's rationale is presumably that the

18   expense will have been a waste if Mr. Doe flees before his case can be resolved.

19       In the abstract, flight risk might appear higher as removal becomes imminent. *See*

20   *Rodriguez Diaz*, 53 F.4th at 1208. But Mr. Doe has suggested that his situation is different. He

21   hopes to stay in the United States with his daughter, partner, sister, brother, mother, and stepfather,

22   all U.S. citizens, and therefore has strong incentives to continue appearing at the proceedings in

23   which he is challenging his removal. Although the risk that Mr. Doe absconds may be lower than

24   _____

25   [6] The government does not contend that Mr. Doe's detention without an individualized bond
     hearing can be justified solely on the basis of its interest in preventing him from residing within
26   the United States in the absence of a clear legal right to do so. *Cf. Rodriguez Diaz*, 53 F.4th at
     1208. Indeed, by providing a statutory right to bond hearings for noncitizens who are in removal
27   proceedings but not covered by § 1226(c), Congress itself has already determined that this
     government interest is not substantial enough to justify detaining noncitizens in the absence of a
28   flight risk or threat to the public.

it is in other cases, he has never had an opportunity to present that claim to a neutral decisionmaker.[7] All that Mr. Doe seeks in his procedural due process claim is the chance to have a neutral judge consider on an individualized basis whether Mr. Doe's ongoing detention is necessary to prevent him from fleeing or to protect the public.

Crucially, what matters under *Mathews* is not the government's overall interest (here, its interests in protecting the public, preventing Mr. Doe's flight, and avoiding a waste of resources), but the degree to which its interests may be marginally impeded by providing additional procedural protections. Here, the government's interests will still be largely protected if Mr. Doe is given a bond hearing: If the immigration judge determines that Mr. Doe is a flight risk or a threat to the community, he will presumably remain in custody. If Mr. Doe poses no such risk, the same government interests will be protected even if he is released. The only remaining interest at issue is the administrative burden of providing a hearing, but that cost is minimal when weighed against the infringement on liberty interests resulting from Mr. Doe's two-year detention.

That leaves the remaining *Mathews* factor: the risk of erroneous deprivation if Mr. Doe is not provided a hearing. The government emphasizes that DHS previously conducted a "custody redetermination" and concluded that Mr. Doe constituted a threat to public safety. It is unclear, though, whether this determination was based on anything other than the fact that Mr. Doe was convicted more than two decades ago (when he was in his twenties) for criminal offenses that fall within the scope of Section 1226(c). Mr. Doe is now nearly fifty. What he seeks here is the chance to have his ongoing detention considered in light of his current condition, not solely criminal conduct of which he was convicted more than two decades ago.

The government also argues that "there is no risk of an erroneous finding that Mr. Doe is subject to Section 1226(c)." Dkt. No. 18, at 26–27. That may be correct, but it is beside the point.

---

[7] In this respect, Mr. Doe's situation is notably different from the detainee in *Rodriguez Diaz*, who was detained under Section 1226(a) and thus received an individualized bond hearing shortly after the start of his detention and had a continuing right to request release on the basis of changed circumstances. *See* 8 U.S.C. § 1226(a)(2)(A); 8 C.F.R. § 1003.19(a), (e). It was only in the context of these procedural protections already afforded to noncitizens detained under Section 1226(a) that *Rodriguez Diaz* concluded noncitizen detainees had no constitutional right to additional bond hearings based solely on the passage of time.

Mr. Doe's challenge is not to that determination but to the absence of any individualized

evaluation of whether his detention is necessary to protect the public or ensure his removal, as the

Constitution demands it be. While his decades-old criminal convictions may be relevant in

determining whether Mr. Doe constitutes a *current* threat to public safety, they are certainly not

dispositive, especially without individualized consideration. "Due process is not satisfied … by

rubberstamp denials based on temporally distant offenses. The process due even to excludable

aliens requires an opportunity for an evaluation of the individual's current threat to the community

and his risk of flight. …To presume dangerousness to the community and risk of flight based

solely on [a] past record does not satisfy due process." *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398–

99 (3d Cir. 1999). Because Mr. Doe has never had the chance to have the questions of whether he

poses a flight risk or safety threat individually considered, the risk of erroneous deprivation is

high. That risk is only multiplied here by the persuasive evidence Mr. Doe has offered regarding

his rehabilitation and family ties, which suggests that he may not pose as great a danger to the

community or risk of flight as the government worries.

Weighed together, the three *Mathews* factors favor providing Mr. Doe with an

individualized hearing to consider whether his continued detention is justified. Immigration is of

course an area where Congress's prerogatives and the Executive's interests are at their strongest.

At the same time, however, Mr. Doe's liberty interests are also substantial. A bond hearing will

greatly reduce the risk that Mr. Doe is being deprived of his physical freedom unnecessarily. And

because the decisionmaker will necessarily consider exactly the kinds of risks that the government

points to as justifying Mr. Doe's detention, requiring such a hearing will not unduly burden the

government or the broader public.

Having determined that Mr. Doe is entitled to a bond hearing, the Court concludes that this

hearing should be conducted before an immigration judge. Both parties recognize this as an

appropriate potential remedy to the procedural due process violations alleged in this case. *See* Dkt.

No. 1, at 42–43; Dkt. No. 18, at 28–30. At this hearing, the government shall bear the burden of

proving by clear and convincing evidence that Mr. Doe's continued detention is warranted. *Singh*

*v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011).[8] Because those proceedings may bear upon the future disposition of Mr. Doe's writ petition, the bond hearing must be transcribed.

### B.    Mr. Doe's Detention May Violate His Substantive Due Process Rights.

Mr. Doe also contends that his continued detention violates his substantive due process rights because it has become punitive in purpose or effect. He offers two theories. First, he argues that the duration for and conditions under which he has been detained are excessive in relation to the government's interests. Second, he argues that he has been detained so long that his liberty interest has become "dispositive, such that *no* degree of government interest, however legitimate, can outweigh it." Dkt. No. 1, at 29. Mr. Doe is correct that "at some point … detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." *See United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)). But while the existence of some threshold of per se due process violation may be "undisputed," *id.*, it has also never been clearly delineated in the context of immigration detention. And in any case, Mr. Doe's bond hearing might render his remaining substantive due process challenges moot. Rather than decide whether Mr. Doe's detention has now lasted so long that no possible justification could support it, the Court will hold Mr. Doe's substantive due process challenge in abeyance pending the outcome of the bond hearing.

---

[8] When *Singh* considered what standard of proof applies in bond hearings, the Ninth Circuit believed that such hearings were required by statute—a conclusion subsequently abrogated by *Jennings v. Rodriguez*, 583 U.S. 281 (2018). But *Singh*'s holding on the burden of proof was based on *constitutional* due process principles rather than any interpretation of the statute. *Singh*, 638 F.3d at 1204 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) and *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)). Because *Singh* specifically considered the precise issue here—the burden of proof that procedural due process requires in immigration bond hearings—and that holding has not been overturned, "*Singh*'s constitutional holding … remains binding law." *Rodriguez Diaz v. Garland*, 83 F.4th 1177, 1179 (9th Cir. 2023) (mem.) (Paez, J., dissenting from denial of rehearing en banc); *see also Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023) (applying *Singh* to place the burden of proof on the government in a Section 1226(c) bond hearing and collecting other Northern District decisions reaching the same result).

United States District Court
Northern District of California

**V.      Conclusion**

At this point more than two years into his detention, the Constitution at a minimum entitles Mr. Doe to an individualized bond hearing before a neutral decisionmaker. By December 15, 2023, the government shall provide Mr. Doe a bond hearing before an immigration judge at which the government shall bear the burden to prove by clear and convincing evidence that detention remains warranted to protect the public or prevent Mr. Doe from fleeing. The hearing and the immigration judge's decision (if rendered orally) shall be transcribed.

**IT IS SO ORDERED.**

Dated: December 1, 2023

P. Casey Pitts
United States District Judge